UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOPE ORGANICS LLC, | |
| Plaintiff, | 21-CV-2416 (TMR) |
| -against- | |
| PREGGO LEGGINGS LLC, | **OPINION & ORDER** |
| Defendant. | |

TIMOTHY M. REIF,  Judge, United States of Court of International Trade:

Forrest Gump (portrayed by Tom Hanks): "Mama always had a way of explaining things so I could understand them."[1]

\* \* \*

Plaintiff Hope Organics LLC ("Hope Organics" or "plaintiff") moves under Rule 65(a) of the Federal Rules of Civil Procedure for an order to preliminarily enjoin defendant Preggo Leggings LLC ("Preggo" or "defendant") from using the "MTHR" mark and selling products bearing the "MTHR" mark during the pendency of this action.  For the reasons that follow, Hope Organics' motion for a preliminary injunction is **granted.**

---

[1] FORREST GUMP (Paramount Pictures 1994).

## BACKGROUND[2]

In September 2019, Hope Organics, founded by Hope Smith, launched the MUTHA brand.  MUTHA is aimed at self-care for new and expecting mothers.  *See* Krzypow Decl. ¶¶ 4-5, ECF No. 21; Pl. Mem. at 3-4, ECF No. 20.  MUTHA began with the MUTHA Body Butter and has since expanded to include body oil, eye cream and face oil.  These products are sold on the MUTHA company website as well as in select luxury retail stores, such as Violet Grey and Bergdorf Goodman, among others.  Krzypow Decl. ¶ 5; Pl. Mem. at 4.

To promote the MUTHA brand, Hope Organics invested "tremendous resources" in digital advertisement platforms and social media.  Pl. Mem. at 4; *see* Krzypow Decl. ¶ 6.  Hope Organics created "unique packaging" for the MUTHA brand featuring all-capital lettering on black and white packaging.  Pl. Mem. at 5.  Since its launch, the MUTHA brand has sold millions of dollars' worth of products featuring the MUTHA mark, Krzypow Decl. ¶ 8, and has been featured in numerous advertisements, social media platforms and publications, including *Vogue*, *WSJ Magazine*, *Forbes* and *Glamour*.  Pl. Mem. at 4-5; Krzypow Decl., Ex. B.

On February 26, 2021, Preggo launched MTHR, a line of skincare products consisting of MTHR Belly Oil and MTHR Belly Cream.  Def. Mem. at 5, ECF No. 25; *see* Okebie-Eichelberger Decl. ¶ 55, ECF No. 27.  The MTHR products are aimed at

---

[2] The facts set forth in this section are based primarily upon the various submissions by the parties filed in connection with the motion before me, including declarations and exhibits, and representations by counsel at the various conferences in this case.

reducing the appearance of stretch marks and dark spots and improving skin elasticity before, during and after pregnancy.  Okebie-Eichelberger Decl. ¶ 33.  In 2014, Oyu Okebie-Eichelberger started Preggo as PREGGO LEGGINGS, which provides "fashionable" maternity leggings to pregnant women and new mothers.  *Id.* ¶ 17.  MTHR is sold online on Preggo's company website and Nordstrom's website. Def. Mem. at 4, 22.

In June 2020, Okebie-Eichelberger reached out to an independent artist named Hina on Fiverr[3] to design the product packaging and labels for the MTHR brand.  Okebie-Eichelberger Decl. ¶ 40.  Okebie-Eichelberger states that "[f]or the design parameters [of the labels], I specified a '[m]inimalist styling that exudes high-end price point' with a black and white color layout."  *Id.* at ¶ 45.  After rounds of edits between Okebie-Eichelberger and Hina, the MTHR design was finalized. *Id.* at ¶ 52.

On February 22, 2021, Hope Organics sent a cease and desist letter to Preggo, to which Preggo did not respond.  *See* Pl. Mem. at 7; Def. Mem. at 5.  On March 19, 2021, Hope Organics commenced this action for trademark infringement, unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under New York common law.  Compl. ¶¶ 25-37, ECF No. 1; Pl. Mem. at 7.

---

[3] Fiverr is an online platform that connects business owners and freelancers offering services, including graphic design, animation and digital marketing.  Fiverr Home Page, https://www.fiverr.com/ (last visited Nov. 18, 2021); *see* Okebie-Eichelberger Decl. ¶ 40.

From April 9, 2021, to July 13, 2021, the parties attempted to settle this dispute.  Rose Decl. ¶¶ 2-6, ECF No. 29.  On May 19, 2021, the parties entered into a Standstill Agreement ("the Agreement") to resolve the dispute without litigation. *Id.* ¶¶ 7-8; Def. Mem. at 5-6.  On June 3, 2021, the parties agreed to the First Amendment to the Standstill Agreement providing that the Agreement would remain in effect until June 15, 2021.  Rose Decl., Ex. A.  On June 15, 2021, Hope Organics became the owner of the U.S. Trademark Registration No. 6391038 for the trademark MUTHA.  Krzypow Decl. ¶ 13, Ex. C.  On June 24, 2021, the parties agreed to a Second Amendment to the Standstill Agreement providing that the Agreement would remain in effect until July 15, 2021.  Rose Decl., Ex. A.

On July 19, 2021, Hope Organics filed a motion for preliminary injunction. Hope Organics alleges that Preggo continues to infringe on Hope Organics' MUTHA trademark by selling its products under the MTHR mark.  *See* Pl. Mem. at 1. Accordingly, Hope Organics asserts that the preliminary injunction is necessary to prevent irreparable harm.  *Id.* at 21-24.

## LEGAL FRAMEWORK

A party seeking a preliminary injunction must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Jackson Dairy, Inc. v. H.P. Hood & Sons*, *Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6,* 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted)). "A plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury." *Weight Watchers Int'l, Inc. v. Luigino's Inc.,* 423 F.3d 137, 144 (2d Cir. 2005). In light of this presumption, the court turns first to the likelihood Hope Organics will succeed on the merits and specifically to the likelihood of consumer confusion.

## DISCUSSION

### I.    Likelihood of Success on the Merits

Hope Organics puts forward two claims against Preggo: (1) trademark infringement, unfair competition and false designation of origin under section 43(a) of the Lanham Act; and (2) trademark infringement and unfair competition under New York common law. Pl. Mem. at 9. Hope Organics asserts that it is likely to succeed on the merits of its claims. *Id.*

To succeed on a trademark infringement claim, "a plaintiff must demonstrate (1) that it has a valid mark entitled to protection and (2) that the defendant's use of it is likely to cause confusion." *Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06-CV-3140 (RJH), 2011 WL 3678802, at *3 (S.D.N.Y. Aug. 19, 2011) (citation omitted).

"[F]alse designation and 'unfair competition [claims] . . . require [ ] an identical test to that of infringement . . . ." *Franklin v. X Gear 101, LLC*, No. 17-CV-

6452(GBD)(GWG), 2018 WL 3528731, at *10 n.7 (S.D.N.Y. July 23, 2018) (alteration

in original) (citing *Richemont N. Am., Inc. v. Huang,* No. 12-CV-4443 (KBF), 2013

WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013)).

"[T]he elements of a cause of action for New York common law infringement

and for unfair competition mirror the requirements of claims stated under the

Lanham Act." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012).

## A.    Trademark Infringement Claims

It is well established that the registration of a trademark "entitles the owner

to a presumption that its mark is valid." *Wal-Mart Stores, Inc. v. Samara Bros.*,

529 U.S. 205, 209 (2000); *see Roberts v. Puma North America, Inc.*, No. 21-CV-2559

(JSR), 2021 WL 2168969, at *2 (S.D.N.Y. May 27, 2021) ("Registration of a

trademark constitutes prima facie evidence of its validity.").

Hope Organics owns the U.S. Trademark Registration No. 6391038 for the

use of the MUTHA trademark in connection with cosmetics.  Pl. Mem. at 5;

Krzypow Decl. ¶ 13, Ex. C.  Preggo has not provided evidence to rebut this

presumption.  Accordingly, Hope Organics' registration satisfies the first prong of

the test and plaintiff's mark is valid.

## B.    Likelihood of Confusion

For the second prong, the Second Circuit uses an eight-factor test set out in

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), to

determine the likelihood of consumer confusion:

> (1) the strength of the trademark; (2) the degree of
> similarity between the plaintiff's mark and the

> defendant's allegedly imitative use; (3) the proximity of
> the products and their competitiveness with each other;
> (4) the likelihood that the plaintiff will "bridge the gap" by
> developing a product for sale in the defendant's market;
> (5) evidence of actual consumer confusion; (6) evidence
> that the defendant adopted the imitative term in bad
> faith; (7) the respective quality of the products; and (8)
> the sophistication of the relevant population of
> consumers.

*Tiffany and Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84-85 (2d Cir. 2020) (citing

*Polaroid*, 287 F.2d at 495).

When weighing the *Polaroid* factors, it "is not a mechanical process where the

party with the greatest number of factors weighing in its favor wins." *Nabisco, Inc.*

*v. Warner–Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (citation omitted). "No single

factor is dispositive, nor is a court limited to consideration of only these factors."

*Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 130 (2d Cir. 2004). Instead,

the "court should focus on the ultimate question of whether consumers are likely to

be confused." *Nabisco*, 220 F.3d at 46 (citation omitted).

### 1.    Strength of Plaintiff's Mark

A mark's strength "depends ultimately on its distinctiveness, or its 'origin-

indicating' quality, in the eyes of the purchasing public." *Savin Corp. v. Savin Grp.*,

391 F.3d 439, 457 (2d Cir. 2004) (citation omitted). To determine a mark's strength

the court will consider: (1) the mark's "inherent distinctiveness" and (2) the mark's

distinctiveness in the marketplace. *Akiro LLC v. House of Cheatham Inc.*, 946 F.

Supp. 2d 324, 333 (S.D.N.Y. 2013).

Hope Organics argues that the MUTHA mark is "suggestive," and, therefore,

"inherently distinctive and strong."  Pl. Mem. at 11 (citing *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 28 (N.D.N.Y. 2003).  Preggo argues that the MUTHA mark is "remarkably weak" because the mark is "synonymous with 'mother,' which is descriptive for maternity skincare products," and "the term 'mother' and its legal equivalents, *e.g.*, synonyms, variations, shortened forms, and foreign translations ("Mother Marks") are ubiquitously used for maternity and skincare products."  Def. Mem. at 7.

### a.   *Inherent Distinctiveness*

The four categories for inherent distinctiveness, from the weakest (least inherently distinctive) to strongest, are: generic, descriptive, suggestive, and arbitrary and fanciful.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *see also Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27, 41 (2d Cir. 2016).  In this case, only the "descriptive" and "suggestive" categories are contested.  A *descriptive* mark "tells something about a product, its qualities, ingredients or characteristics.  It may point to a product's intended purpose, its function or intended use, its size, or its merit."  *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).  A mark is *suggestive* "if it requires imagination, thought and perception to reach a conclusion as to the nature of goods."  *Stix Products, Inc.* v. *United Merchants & Manufacturers Inc.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968).

The Lanham Act "forbids the registration of a mark which, when applied to the goods of the applicant, is 'merely descriptive.'"  *Abercrombie*, 537 F.2d at 10.

Accordingly, as a general rule, descriptive marks are "unprotectable," but may be protected when the marks "acquire 'secondary meaning.'" *Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 283, 289 (S.D.N.Y. 2008). In contrast, a suggestive mark "is entitled to registration without proof of secondary meaning." *Abercrombie*, 537 F.2d at 11. When a mark is registered with the United States Patent and Trademark Office ("USPTO") without requiring proof of a secondary meaning, there is a "rebuttable presumption that the mark is suggestive or arbitrary or fanciful rather than merely descriptive." *Id.*; *see Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive."). It is undisputed that the USPTO did not require evidence of secondary meaning for registration of the MUTHA mark. *See* Pl. Reply Mem. at 3; Def. Mem. at 8, n.1. As such, Preggo "bears the burden to rebut the presumption of [the] mark's protectability by a preponderance of the evidence." *Lane Cap. Mgmt.*, 192 F.3d at 345.

The differences between categories of marks are not always clear, *see Abercrombie*, 537 F.2d at 9; however, the Second Circuit has identified previously that:

> An illuminating explanation of the difference between a descriptive mark that conveys an idea of the characteristics of the product and a suggestive one that requires imagination to divine the nature of the product is that if "there is an imaginative factor connecting the name and the product; [if] one suggests the other, but without describing it," then the name is suggestive.

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 74 (2d Cir. 1988) (citing *Information*

*Clearing House, Inc. v. Find Magazine*, 492 F. Supp. 147, 156 (S.D.N.Y. 1980)).

Preggo has failed to meet its burden to rebut the presumption of the

protectability of the MUTHA mark because Preggo has not demonstrated how the

mark "conveys information about these products' qualities, characteristics and

intended use." Def. Mem. at 8.  The MUTHA mark does not describe the products

at issue — cosmetic maternity products — and could refer to a wide variety of

products related to maternity or motherhood.  Rather, the MUTHA mark suggests

"mother" or motherhood, creating an "imaginative factor connecting the name and

the product."  Accordingly, the court concludes that the MUTHA mark is suggestive

and, therefore, inherently distinctive.

### b.     *Distinctiveness in the Marketplace*

A mark's distinctiveness in the marketplace or "acquired distinctiveness"

focuses on "[the] recognition plaintiff's mark has earned in the marketplace as a

designator of plaintiff's goods or services."  *Brennan's, Inc.*, 360 F.3d at 131.; *see*

*Virgin Enters. Ltd. v. Nawab,* 335 F.3d 147, 151 (2d Cir. 2003) ("'[A]cquired

distinctiveness,' *i.e.,* fame, or the extent to which prominent use of the mark in

commerce has resulted in a high degree of consumer recognition.").  "Widespread

consumer recognition of a mark previously used in commerce increases the

likelihood that consumers will assume it identifies the previously familiar user, and

therefore increases the likelihood of consumer confusion if the new user is in fact

not related to the first."  *Virgin Enters.*, 335 F.3d at 148.

To determine a mark's acquired distinctiveness, the court considers six factors: "advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use." *Car-Freshner Corporation v. American Covers, LLC.*, 980 F.3d 314, 329 (2d. Cir. 2020) (citation omitted).  The record does not provide evidence of consumer studies.  Nevertheless, despite only being on the market since 2019, the MUTHA mark has achieved widespread consumer recognition.  Hope Organics has "sold millions of dollars of products bearing the MUTHA trademark," and has generated considerable coverage in the press, including in major publications such as *Marie Claire*, *Cosmopolitan* and *Glamour*.[4]  Krzypow Decl. ¶¶ 8-10.  Moreover, Hope Organics has invested millions of dollars to promote the MUTHA mark, including in social media, search advertising and display adds.  Hope Organics has also promoted the mark on social media platforms, such as Instagram, YouTube and tiktok, as well as through influencer events and press conferences.  Krzypow Decl. ¶ 6.

Preggo asserts that the MUTHA mark is not distinctive because other companies use "Mother Marks" for maternity products.  Def. Mem. at 10-12.  Preggo's presentation of evidence of third-party use in Preggo's effort to challenge

---

[4] On September 11, 2020, *Forbes* described the success of the MUTHA brand, noting:  "The speed of MUTHA's meteoric rise to cult status defies parallels.  Rarely does a skincare line *develop the type of footing and word-of-mouth traffic* that MUTHA has in the last year since its formal launch."  Krzypow Decl. ¶ 9 (emphasis supplied); *see also* Krzypow Decl., Ex. B.

the strength of the MUTHA mark actually exposes the uniqueness of plaintiff's

mark.  Many of the examples of "Mother Marks" that Preggo provides do not relate

directly to maternity cosmetic products; rather, the marks are related to other types

of maternity products, including maternity clothing, pregnancy publications and

educational services.  *See id.* at 10-11; Oral Argument Tr. at 11:3-13:25.  Further,

none of the cited "Mother Marks" for maternity cosmetic products is similar,[5] in

sound or appearance, to "MUTHA," indicating its uniqueness in the marketplace.

Finally, none of the "Mother Marks" provided by defendant consists of a one-word

mark that plays on the word "mother" in the American-English language.

Accordingly, this factor weighs in the favor of plaintiff.

### 2.    Similarity of the Parties' Marks

To determine similarity, the court evaluates the "overall impression on a

consumer, considering the context in which the marks are displayed and 'the

totality of factors that could cause confusion among prospective purchasers.'"

*Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir.

2005) (citation omitted).  "[M]arks are considered similar when they are similar in

---

[5] In its briefs, exhibits and at oral argument, defendant presented numerous "Mother Marks" to support its argument that the MUTHA mark is not strong or distinctive in the marketplace.  *See* Def. Mem. at 10-11; Ghiam Decl. Exs. J, K and N; Oral Argument Tr. at 11:3-14:20.  Indeed, there appear to be numerous trademark registrations that use or relate to the word "mother."  Nevertheless, beyond sharing a connection to the word "mother," none of the examples provided by defendant is similar to the MUTHA mark.  For example, the majority of the marks provided are more than one word, e.g., "Mother E," "One Bad Motha Foamer" and "Sorry Mom."  The other examples of one-word marks were either in a foreign language, such as "AMMA" or "UMA" or used the shortened word for "mother" in other non-American dialects, e.g., "MUM."

appearance, sound and meaning." *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 375 (S.D.N.Y. 2018) (quoting *Clinique Labs., Inc. v. Dep Corp.*, 945 F. Supp. 547, 552 (S.D.N.Y. 1996)).

Preggo asserts that the marks are different because the MTHR mark is always followed by the house mark, PREGGO LEGGINGS.  Preggo further asserts that, as the MUTHA brand plays on the slang term "mutha," the MUTHA and MTHR marks create distinct "commercial impressions."  Def. Mem. at 13.  Plaintiff argues that the products are similar and asserts that the text "by Preggo Leggings" on the MTHR mark does not prevent likely confusion because "[t]o the extent those words are noticed by consumers at all, they instead can suggest an *affiliation* with MUTHA."  Pl. Reply Mem. at 7.

The similarities between the MUTHA and MTHR marks are considerable. Both marks play on the traditional spelling of "mother," evoking the same meaning. Further, when spoken, MTHR and MUTHA are almost indistinguishable in sound.

It is also clear from the exhibits and briefs provided by the parties that the MUTHA and MTHR marks are practically identical in appearance on the product packaging as both products use capital black lettering with a white background.



Pl. Mem. at 2; *see also* Ghiam Decl., ECF No. 26, Exs. C, D, Q.

The court notes that the primary packaging (first layer of packaging that encases and contains the liquid) of the MUTHA products is purple while the primary packaging of the MTHR products is yellow and white;[6] however, the differences in color do little to curtail the similarities in the "overall visual impression the marks create upon casual inspection." *Guthrie Healthcare*, 826 F.3d at 38. When the primary packaging is featured in advertisements or online sale, it is often accompanied by the black and white product outside packaging (second layer of packaging that the products are placed in), which is nearly identical between the MTHR and MUTHA brands. *See, e.g.*, Ghiam Decl., Ex. C; Krzypow Decl., Exs. A, D. Further, the difference in color of the primary packaging could suggest affiliation or a variety of product lines under the same brand. As a result, even when faced with the different colors for the primary packaging, a casual

---

[6] The court notes that only certain MTHR products use yellow for its primary packaging. For example, the MTHR Belly Cream uses white primary packaging. *See* Krzypow Decl., Ex. D; *see also* Oral Argument Tr. at 16:8-16:10.

consumer is likely to believe that they are viewing the same mark.

Similarly, the additional text, "PREGGO LEGGINGS", alongside "MTHR" on the defendant's mark is not a prominent distinguishing feature.  In fact, this text, which is significantly smaller than the main MTHR text on defendant's mark, could suggest affiliation between Hope Organics and Preggo.  *See Guthrie Healthcare*, 826 F.3d at 39 ("Given the importance of the distinctive logo in both cases to the overall design, coupled with the similarity between the two companies' logos, the appearance of Defendant's company name alongside what appears to be Plaintiff's logo would be likely to suggest . . . a mutually consenting or affiliated business relationship . . . .").  Accordingly, there is a high level of similarity between the MTHR and MUTHA marks and this factor weighs in favor of plaintiff.

### 3.      Competitive Proximity of the Products

The proximity of products focuses on whether the parties' products compete in the same or similar channels of trade.  *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991).

Preggo argues that MTHR and MUTHA products are targeted to different audiences because MTHR products are available only on the Preggo and Nordstrom websites.  Def. Mem. at 22.  Preggo further maintains that the MTHR mark is that of a "more traditional" product, asserting that the MUTHA mark "seeks to create an image of a newer product."  *Id*.

Preggo's attempt to minimize the competitiveness of these products fails.

Both the MUTHA and MTHR products are described as high-end cosmetic products aimed at new and expecting mothers.  *See* Pl. Mem. at 1; Def. Mem. at 4, 21; *see also* Okebie-Eichelberger Decl. ¶ 33.  Both products are also sold online at luxury retailers.[7]  Finally, both brands play on the traditional spelling of the word "mother" and both companies spend significant sums of money on online advertising and social media promotion, demonstrating an attempt by *both* companies to present a modern brand.  Accordingly, the MTHR and MUTHA brands have the same target audience — new and expecting mothers seeking luxury maternity cosmetic products — and are sold and advertised in the same or similar venues.  As such, this factor weighs in the favor of plaintiff.  *See Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 494 (noting that a determination of the competitive proximity of products requires courts to "compare all aspects of the products, including price, style, intended use, target clientele, typical distribution channels, and others" (citing *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y. 2000)).

### 4.    Likelihood that Plaintiff Will Bridge the Gap

"This factor is designed to protect the senior user's 'interest in being able to enter a related field at some future time."[8]  *W.W.W. Pharm. Co. v. Gillette Co.*, 984

---

[7] As stated previously, MTHR is sold on Nordstrom's website and MUTHA is sold on the websites and in the retail stores of goop, Violet Grey and Bergdorf Goodman, among others.  *See* Okebie-Eichelberger Decl. ¶ 34; Krzypow Decl. ¶ 5.

[8] The senior user is the first to use a mark.  *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

F.2d 567, 574 (2d Cir. 1993) (citation omitted), *superseded on other grounds by Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39 (2d Cir. 1994).  When the parties' products are already in direct competition, "there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis." *Star Industries, Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005).  As the parties are already competing in the same field of maternity cosmetic products, this factor is neutral.

### 5.  Actual Confusion

This factor "asks courts to consider the evidence that consumers are actually confused as to the origin of a particular product or service or as to whether the junior user of a mark is sponsored by or affiliated with the senior user." *Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018).  "Evidence of actual confusion may consist of anecdotal or survey evidence." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 319 (S.D.N.Y. 2000) (citation omitted), *aff'd sub nom. Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262 (2d Cir. 2000).  "[T]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *Disney Enterprises*, 322 F. Supp. 3d at 435 (quoting *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 589 (S.D.N.Y. 2015)).  Nevertheless, it is not necessary to provide evidence of actual confusion to succeed on a trademark infringement claim.  *See, e.g.*, *Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).

Plaintiff does not provide any evidence of actual confusion and cites the recency of MUTHA's launch as the reason that plaintiff "has not yet had the

opportunity to discover the actual effects of the infringing activities upon consumers."[9]  Pl. Mem. at 16.  Plaintiff notes that the Second Circuit has found that "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."  *Id*. at 15 (quoting *Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).  Plaintiff argues that in circumstances in which "the infringing product or service has been in the marketplace for only a 'relatively short period of time'", actual confusion need not be shown to demonstrate a likelihood of confusion.  *Id*. (quoting *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 523 (S.D.N.Y. 2009)).  Plaintiff argues that in this case evidence of actual confusion, *e.g.*, in the form of social media comments or online reviews, is difficult to provide because the MTHR brand is "a very small operation [and] [t]he number of consumers that have actually interacted with this product is very small."  Oral Argument Tr. at 35:25-36:3.

Preggo asserts that plaintiff's failure to provide evidence of actual confusion is "evidence that the likelihood of confusion cannot be shown."  Def. Mem. at 19 (quoting *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, No. 96-CV-9469 (RWS), 1999 WL 191527, at *12 (S.D.N.Y. Apr. 7, 1999)).  Preggo argues further that the

---

[9] Plaintiff argues that "the absence of evidence of actual confusion is even less significant when the two marks have co-existed for a relatively short time period, as is the case here where the MUTHA products and MTHR products have co-existed for only five months."  Pl. Reply Mem. at 9 (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.,* 830 F.2d 1217, 1227 (2d Cir. 1987)).

lack of any social media comments, particularly considering the fact that "[b]oth companies are very active in the social media space, [and] both companies have websites,"[10] Oral Argument Tr. at 34:11-34:12, does not support the conclusion of likelihood of confusion.

The court concludes that this factor is neutral.  Evidence of actual confusion is a strong indicator of likelihood of consumer confusion.  *See Virgin Enters.*, 335 F.3d at 151 ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion." (citation omitted)).  "[I]f the two marks have been in use over a substantial period of time without ever producing instances of confusion, this fact can support a junior user's contention that confusion is not likely."  *Guthrie Healthcare*, 826 F.3d at 44 (citation omitted).  Nevertheless, "the absence of evidence of actual confusion does not necessarily prove anything, especially when there has been neither long nor significant experience of the two trademarks operating side-by-side in the same market."  *Id.*

At oral argument, plaintiff argued that its lack of evidence of actual confusion was due, in part, to consumers not typically "spending their days commenting on products."[11]  Oral Argument Tr. at 36:2-36:7.  Plaintiff's assertion ignores the fact

---

[10] At oral argument, defendant argued: "[D]uring the COVID time the vast majority of the sales are taking place online.  Given how active this space is, plus I would like to point out that the consumers are living in a different time now.  You could leave reviews, you could send complaints, you could return the product, all of which indicates that you're unhappy, you're disappointed, you're complaining, you're confused about the product."  Oral Argument Tr. at 34:12-34:19.

[11] At oral argument, plaintiff asserted that consumers are not able to comment or like posts on "Preggo Leggings Instagram feed."  *Id.* at 30:25-31:10.

that courts in this Circuit have accepted online customer reviews and comments on social media as anecdotal evidence of actual confusion.  *See Museum of Modern Art*, 339 F. Supp. 3d at 378-79; *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 672-74 (S.D.N.Y. 2016); *cf. Disney Enterprises*, 322 F. Supp. 3d at 436 (rejecting online customer reviews as anecdotal evidence of actual confusion because "none of the customer reviews suggest [sic] the slightest sign of confusion as to the origin, source, affiliation, or sponsorship of [defendant's] services, much less confusion likely to produce 'a diversion of sales, damage to goodwill, or loss of control over reputation'" (citation omitted)).  Accordingly, it is not extraordinary in today's Internet age for consumers to communicate with brands in the form of online comments and reviews, and for parties to rely on such comments to present any evidence of actual confusion.

Plaintiff's case "would of course be even stronger if it had evidence of actual consumer confusion"; however, the absence of such evidence "does not necessarily prove anything" considering that, at the time the motion for a preliminary injunction was filed, the parties' products had coexisted in the market for only five months.  *Guthrie Healthcare*, 826 F.3d at 44; *see Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1988) (holding that "the magistrate properly declined to make any negative inference" from the lack of evidence of actual confusion considering the short period of time that defendant's product had been on the

market).[12]  Accordingly, the court concludes that this factor "neither helps nor hurts" plaintiff's case and, is therefore neutral.  *Hasbro, Inc.*., 858 F.2d at 78.

### 6.    Defendant's Good Faith in Adopting the Mark

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."  *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005).

Plaintiff argues that Preggo launched the MTHR products in February 2021, after the MUTHA products had already been operating in the market for 18 months and received notable media attention.  Pl. Mem. at 16.  Plaintiff asserts that defendant has a "business strategy" of capitalizing on established brands and "attempting to create a connection between the two brands where there is none."  *Id*. at 18.[13]  Plaintiff further notes that Preggo demonstrated bad faith by failing to respond to Hope Organics' cease and desist letter, which was sent to Preggo prior to the launch of the MTHR product.  *Id.*

---

[12] In reviewing the lack of evidence of actual confusion, the lower court determined: "[D]efendant's product has been on the market for only a short time; certainly less than one year.  As a result, it would be difficult for plaintiff to discover actual instances of confusion."  *Hasbro Inc. v. Lanard Toys Ltd.*, No. 87-CV-6214 (KTD), 1987 WL 123983, at *15  (S.D.N.Y. Nov. 18, 1987) (citation omitted), *rev'd on other grounds*, 858 F.2d 70, 78 (2d Cir. 1988).

[13]  Plaintiff argues that Preggo's business practice is evidence of its bad faith.  Pl. Mem. at 18.  Specifically, plaintiff notes: "Preggo's website features and sells clothing that uses trademarks owned by Gucci, Supreme, and Chanel, marketing such items as the Preggo "Goochy" Sweatshirt, the Preggo "Channelle No. 1" T-shirt, and the Preggo "SOOPREEM" T-shirt."  *Id.*; *see id.* at 6-7; Krzypow Decl., Ex. E.

Defendant argues that Preggo did not launch the MTHR brand in bad faith.
Defendant argues that the CEO of Preggo reached out to an independent artist and
did not mention Hope Organics or the MUTHA mark.  Defendant notes further that
Preggo conducted two independent trademark searches to ensure that there were no
conflicting marks — the first before the launch of the MTHR brand and the second
after the filing of this action.  *Id.* at 5; *see* Okebie-Eichelberger Decl., Ex. E; Ghiam
Decl., Ex. E.

There is minimal evidence of good faith action by defendant.  In general,
conducting trademark searches or seeking the advice of counsel demonstrates good
faith on the part of the defendant.  *See The Sports Authority, Inc. v. Prime
Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996).  Defendant conducted a
trademark search but did so only 16 days before launching the MTHR brand, even
though the company claims to have started development of the brand in 2015.  *See*
Oral Argument Tr. at 42:15-43:11; Okebie-Eichelberger Decl. ¶ 37-38.  Defendant
states that the results of the trademark search did not identify plaintiff's MUTHA
mark as a conflicting mark.  Def. Mem. at 5.  Notably, Hope Organics did not
receive its trademark registration until June 15, 2021, *see* Krzypow Decl., Ex. C.
Nevertheless, defendant was aware of the potential conflict by virtue of having
received Hope Organics' cease and desist letter, which was sent to Preggo before the
launch of its MTHR brand.  *See* Krzypow Decl., Ex. G.  Defendant states that upon
receiving the cease and desist letter, Preggo consulted with three attorneys;
however, defendant does not contest that Preggo did not respond to the letter prior

to launching the MTHR brand.  *See* Oral Argument Tr. at 38:10-39:9, 42:15-43:11;

*cf. La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 CV-4129 (AGS), 2000 WL 1253240, at *10

n.9 (S.D.N.Y. Sept. 1, 2000) (finding no bad faith where defendant "upon finally

being apprized of the potential conflict by letter . . . immediately responded").

To determine a defendant's intent, "actual or constructive knowledge" of the

senior user's mark may point to bad faith.  *Paddington Corp. v. Attiki Importers &*

*Distributors, Inc.*, 996 F.2d 577, 587 (2d Cir. 1993) (quoting *Mobil Oil Corp. v.*

*Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987)).  "Where such prior

knowledge is accompanied by similarities so strong that it seems plain that

deliberate copying has occurred, we have upheld findings of bad faith."  *Id.*; *see*

*Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.,* 832 F.2d 1317,

1322 (2d Cir. 1987) ("[E]vidence of intentional copying raises a presumption that

the second comer intended to create a confusing similarity." (citation omitted)).

The court has already established that the two marks share remarkable

similarities.  Defendant maintains that Preggo's CEO and the designer did not

discuss the MUTHA brand or mark when designing the mark for MTHR.  Preggo's

CEO and the designer began to work on the MTHR mark in June 2020.  Okebie-

Eichelberger Decl. ¶ 40.  By that time, the MUTHA mark had already been in the

market for several months and had gained recognition in notable publications such

as *Vogue*, *Wall Street Journal* and the *Zoe Report*.  Krzypow Decl., Ex. B.  It is

probable that Preggo would have been aware of MUTHA, a popular and directly

competitive product, and, therefore, it seems highly unlikely to the court that the

identical nature of the marks is purely coincidental.

Considering the above factors, the court concludes that defendant acted in bad faith.  This factor weighs in favor of plaintiff.

### 7.    Quality

Quality focuses on "whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Museum of Modern Art*, 339 F. Supp. 3d at 379 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995)).

Plaintiff argues that Preggo's MTHR product is of inferior quality and asserts that the MUTHA brand's reputation is "at risk" with any potential confusion or association with Preggo.  Pl. Mem. at 19.  Plaintiff maintains that the MTHR product is inferior because it has water as the main ingredient and phenoxyethanol as an ingredient.  *Id*.  Plaintiff notes that the MUTHA product does not contain water or phenoxyethanol, asserting that water is used in lower quality cosmetic products as an "inactive 'filler' ingredient," and that the preservative phenoxyethanol has been associated with "potential health concerns."  *Id*. Defendant argues that Hope Organics provides no evidence for its claims and notes that water and the preservative phenoxyethanol are used as ingredients in high-end cosmetic products, such as ones sold by Chanel and Dior.  Def. Mem. at 19-20.

There is minimal record evidence demonstrating that defendant's MTHR product is inferior to plaintiff's MUTHA product.  Moreover, there is no evidence pointing to whether any differences in the ingredients between the products would

create a likelihood of consumer confusion.  *See Akiro*, 946 F. Supp. 2d at 340-341

(holding that "the current record contains scant evidence as to whether AUNT

JACKIE'S products are inferior to MISS JESSIE'S products, and . . . the record also

contains little evidence about the nature of the relevant market that might

illuminate whether any similarity or difference in quality would make consumer

confusion more or less likely").

The quality factor does not favor either party.  Accordingly, the court

determines that this factor is neutral.  *See Star Industries*, 412 F.3d at 389

(determining that the quality factor did not support either party because the "record

is insufficient to support a finding that either product is markedly superior in

quality to the other.").

### 8.    Sophistication of the Purchasers

This factor "consider[s] the general impression of the ordinary purchaser,

buying under the normally prevalent conditions of the market and giving the

attention such purchasers usually give in buying that class of goods."  *Star*

*Industries*, 412 F.3d at 390 (alteration in original) (quoting *Sports Authority,* 89

F.3d at 965).  As a general rule, "the more sophisticated and careful the average

consumer of a product is, the less likely it is that similarities in trade dress or trade

marks will result in confusion concerning the source or sponsorship of the product."

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc*, 973 F.2d 1033, 1046 (2d Cir. 1992).

Consumer sophistication can be demonstrated by direct evidence, such as

expert testimony or surveys, or, "in some cases[,] a court is entitled to reach a

conclusion about consumer sophistication based solely on the nature of the product or its price." *Star Industries,* 412 F.3d at 390.

Neither party provides direct evidence of consumer sophistication.  Preggo argues that both the MTHR and MUTHA marks operate in the luxury maternity cosmetic market, and, therefore, "the high price point of these products attracts mostly consumers that exercise a certain degree of care before purchasing the product." Def. Mem. at 21.  In response, plaintiff asserts that certain customers, including those with "high purchasing power," are likely to buy luxury cosmetic products without careful consideration.  Pl. Reply Mem. at 12.

The parties do not dispute that the products at issue are luxury items.  In general, the sophistication of a consumer can be inferred by the price point of the product. *See Malletier v. Dooney & Bourke*, 561 F. Supp. 2d 368, 389 (S.D.N.Y. 2008) ("If the goods are expensive, the reasonably prudent buyer does not buy casually, but only after careful consideration.  Thus, confusion is less likely than where the goods are cheap and bought casually." (citation omitted)).  Nevertheless, "when, as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion." *See Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.,* 182 F.3d 133, 143 (2d Cir. 1999) (internal quotation marks omitted) (citation omitted).

Given the remarkable similarities between the MUTHA and MTHR marks in appearance, sound (when pronouncing the product's name) and meaning, even the most sophisticated buyer would likely have difficulty differentiating between the

products.  *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190,

1195 (2d Cir. 1971).  Accordingly, this factor weighs in favor of plaintiff.

### C.      Overall Likelihood of Consumer Confusion

In this case, the court finds that the overall circumstance as reflected in a

majority of the individual *Polaroid* factors weighs in favor of plaintiff.  Considering

the "ultimate question of whether consumers are likely to be confused", *see Nabisco*,

220 F.3d at 46, given the strength of the MUTHA mark and the nearly identical

appearance and sound of the MUTHA and MTHR products competing directly in

the same market, compounded by the evidence on the record indicating defendant's

bad faith intent to create confusion for consumers, plaintiff has demonstrated that

the likelihood of consumer confusion is plausible.  Accordingly, plaintiff has

established a likelihood of success on the merits for its claims as to trademark

infringement, unfair competition and false designation.

## II.    Irreparable Harm

A party seeking a preliminary injunction "must demonstrate that it will

suffer irreparable harm in the absence of the requested relief."  *Sussman v.*

*Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quoting *Latino Officers Ass'n v. Safir*,

170 F.3d 167, 171 (2d Cir. 1999)).  "Irreparable harm 'exists in a trademark case

when the party seeking the injunction shows that it will lose control over the

reputation of its trademark pending trial,' because loss of control over one's

reputation is neither 'calculable nor precisely compensable.'"  *New York City*

*Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y.

2010) (quoting *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.*, 754 F.2d

91, 95 (2d Cir. 1985)).  Thus, "the [Second] Circuit has held that as long as there has

not been undue delay in bringing a claim, a 'plaintiff who establishes that an

infringer's use of its trademark creates a likelihood of consumer confusion generally

is entitled to a presumption of irreparable injury.'"[14]  *U.S. Polo Ass'n, Inc. v. PRL*

*USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (quoting *Weight*

*Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005)).  The

Trademark Modernization Act of 2020 also states:

> A plaintiff seeking any such injunction shall be entitled to
> a rebuttable presumption of irreparable harm . . . *upon a*
> *finding of likelihood of success on the merits* for a violation
> identified in this subsection in the case of a motion for a
> preliminary injunction or temporary restraining order.

---

[14] Defendant argues that there was "substantial delay in seeking relief" by plaintiff.
Def. Mem. at 24.  Defendant notes that plaintiff sent the cease and desist letter in
February 2021 and filed for preliminary injunction five months later.  *Id.*
Accordingly, defendant argues that "plaintiff has sat on its rights and waited too
long to seek a preliminary injunction."  *Id.* at 24-25.  Defendant's argument is
without merit.  From April 9, 2021, to July 13, 2021, the parties attempted to settle
this dispute, including agreeing to a Standstill Agreement in which defendant
agreed "not to argue that Hope Organics delayed in seeking such relief during the
pendency" of the Agreement.  Rose Decl. ¶¶ 4-5; Rose Decl., Ex. A; *see* Pl. Reply
Mem. at 13-14, n.17.  Plaintiff filed the motion for the injunction on July 19, 2021,
just six days after these efforts concluded.  Rose Decl. ¶ 6.  The court will not find a
delay where parties have attempted to settle a dispute.  *See Marks Organization,*
*Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (determining that plaintiff's
16-month delay in seeking a preliminary injunction did not "defeat" the motion
because the delay was due, in part, to settlement discussions); *Goat Fashion Ltd. v.*
*1661, Inc.*, No. 19-CV-11045 (PAE), 2020 WL 5758917, at *5 (S.D.N.Y. Sept. 28,
2020) ("Acceptable explanations for delay include the plaintiff's ignorance regarding
defendant's alleged infringement, good-faith attempts to investigate that
infringement, and diligent pursuit of settlement negotiations." (citation omitted)).
For these same reasons, the case cited by defendant in its post-oral argument letter
to the court, *Two Hands IP LLC v. Two Hands Am., Inc. & ABC Corps. 1-100*, No.
21-CV-3855 (JGK), 2021 WL 4437975 (S.D.N.Y. Sept. 28, 2021), is inapposite.

15 U.S.C. § 1116(a) (emphasis supplied).

As discussed above, success on the merits in a trademark infringement case requires that plaintiff show that its mark is entitled to protection and that defendant's use of the mark is likely to cause confusion.  *See Chloe*, 2011 WL 3678802, at *3.  Defendant argues that plaintiff has failed to show irreparable injury because plaintiff has failed to provide any evidence of actual confusion.  Def. Mem. at 23.  As noted above, evidence of actual confusion is not necessary to establish the likelihood of confusion, particularly as the products have existed in the same market for less than a year.

Since its launch, the MUTHA brand has received widespread coverage in mainstream publications, acquiring a favorable reputation in the beauty industry. *See* Krzypow Decl., Ex. B.  Plaintiff has demonstrated the likelihood of confusion between the MUTHA and MTHR marks, and, therefore, absent a preliminary injunction, "the reputation and goodwill cultivated by [Hope Organics] would be out of its hands."  *U.S. Polo Ass'n, Inc.*, 800 F. Supp. 2d at 541.  Accordingly, plaintiff has established that it will suffer irreparable harm in the absence of a preliminary injunction.

## III.   Balance of Hardships and Public Interest

The Second Circuit has found that the consideration of balance of hardships and public interest is necessary to issue a preliminary injunction in cases involving trademark infringement.  *See Woodstock Ventures, LC v. Woodstock Roots LLC,* 837 F. App'x 837, 838 (2d Cir. 2021) (summary order); *see also RiseandShine*

*Corporation v. PepsiCo, Inc.*, No. 21-CV-6324 (LGS), 2021 WL 5173862, at *4

(S.D.N.Y. Nov. 4, 2021).

 The balance of hardships weighs in favor of Hope Organics.  Since its launch,

Hope Organics has invested time and capital in making a name for the MUTHA

brand in the beauty industry.  These efforts have allowed the brand to gain a

prominent presence and reputation in the market.  *See* Oral Argument Tr. at 58:19-

59:8.  Given the likelihood of consumer confusion, plaintiff will suffer irreparable

harm in the absence of a preliminary injunction.  Defendant argues that Preggo

Leggings' business will be disrupted if it is required to stop selling its inventory at

this time.  Def. Mem. at 25.  The only harm that defendant is able to point to is "loss

of profits on sales."  *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 8 (2d

Cir. 1996).  Such harm is "quantifiable" and can be compensated.  In contrast, the

"loss of consumer goodwill" that Hope Organics will face is "unquantifiable."  *Id*.

Moreover, considering the lack of good faith on the part the defendant, including

launching the MTHR brand after being notified about the MUTHA brand, any

"quantifiable" harm that defendant may face was avoidable.

 The public interest also weighs in favor of Hope Organics.  The consideration

of the public interest is designed to "ensure that the 'public interest would not be

disserved' by the issuance of a preliminary injunction."  *Salinger v. Colting*, 607

F.3d 68, 80 (2d Cir. 2010) (quoting *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388,

391 (2006)).

 The defendant asserts that issuing the injunction will deprive consumers of

the MTHR product; however, it is well established that there is a "strong interest in preventing public confusion." *ProFitness Physical Therapy Ctr., v. Pro-Fit Orthopedic & Sports Physical Therap P.C.*, 314 F.3d 62, 68 (2d Cir. 2002).  The defendant's MTHR mark is likely to cause confusion in the market and harm the reputation of an up-and-coming brand.  Accordingly, the public would be served by ending that confusion.  *See Juicy Couture, Inc. v. Bella Intern, Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (finding that plaintiff demonstrated that "defendants' actions are likely to cause consumer confusion.  Therefore, the public interest would not be disserved by the issuance of a preliminary injunction.").

## CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for a preliminary injunction.

SO ORDERED.

                                                    /s/ Timothy M. Reif
                                                    _____

Dated: December 15, 2021                            Timothy M. Reif, *Judge*
New York, New York                                  United States Court of International Trade
                                                    *Sitting by Designation*
                                                    United States District Court for the
                                                    Southern District of New York